UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------------------  x
CHAZANTINE GRIFFIN,                             :
                                                :
                    Plaintiff,                  :
                                                :
            v.                                  :          25-CV-274 (SFR)
                                                :
KAREN GRANDE, et al,                            :
                                                :
                    Defendants.                 :
------------------------------------------------------------  x
```

**<u>INITIAL REVIEW ORDER</u>**

Plaintiff Chazantine Griffin, an individual serving a sentence in the custody of the Connecticut Department of Correction ("DOC"),[1] brings a civil rights action *pro se* under 42 U.S.C. § 1983 against 15 Defendants.[2] Griffin brings claims under the Eighth Amendment, alleging that at a previous DOC facility he experienced unsanitary and unsafe showers and received inadequate treatment for his resultant MRSA infection. He also asserts claims of retaliation in violation of the First Amendment. Griffin sues Defendants in their individual and official capacities and seeks damages and injunctive relief.

For the reasons explained below, the First Amendment and Eighth Amendment claims in the Amended Complaint may proceed to service.

---

[1] I may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). A search on the publicly available DOC website under the inmate search function shows that Griffin was sentenced in 2022 to a seven-year term of imprisonment.

[2] The Amended Complaint names the following Defendants: APRN Karen Grande, Dr. Kavita Prabhakar, Elizabeth Barnes, Lieutenant Peau, Warden Daniel Dougherty, Commissioner Angel Quiros, Dr. Brain Rader, RCOO Jennifer Sanchez, Dr. Gerald Valletta, Marisa Andexler, Deputy Warden Oles, Nurse Heather Mayernik, Nurse Takesha West, Nurse Dawn Bertocki, and Wendy Regan. Am. Compl. 1, 15, ECF No. 22.

## I.    BACKGROUND

### A.    Procedural History

After granting Griffin's Motion to Proceed In Forma Pauperis, ECF No. 14, I conducted an initial review of the Complaint filed on February 21, 2025. I explained in that Order that I understood the core of the Complaint to be Griffin's "claim of Eighth Amendment deliberate indifference related to (1) unsanitary showers and (2) failure to treat the MRSA infection which Plaintiff says he contracted from the unsanitary showers." ECF No. 19. Based on that understanding, I explained that Griffin's claims relating to treatment for an injured finger, as well as sexual harassment, physical injuries, and retaliation after complaints of mental health services were misjoined. *Id.*

In reviewing the plausibility of the claims that were properly joined, I stated that the length and structure of the Complaint did not permit me to analyze whether any of the Defendants named in the caption of the Complaint were liable. *Id.*[3] I therefore dismissed the

---

[3] My Order stated in relevant part:

As the court explains, although the unsanitary showers and MRSA infection claims may be viable, the court does not find that the Complaint as drafted may proceed to service. Deliberate indifference to a prisoner's serious medical needs may constitute cruel and unusual punishment in violation of the Eighth Amendment. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The Eighth Amendment, which forbids cruel and unusual punishment, also prohibits conditions in state prisons that subject incarcerated individuals to the "wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The ban on cruel and unusual punishment "does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted). A successful claim for deliberate indifference must satisfy both objective and subjective components of the test. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). The Complaint satisfies the objective component insofar as it alleges that Plaintiff suffered an MRSA infection and unsanitary showers that caused the condition. But because of the length of the

Complaint without prejudice and with leave to amend. *Id.* Griffin filed an Amended Complaint on February 26, 2026. ECF No. 22.

### B.    Factual Background

I accept as true the well-pleaded allegations in the twelve-page handwritten statement of facts within the Amended Complaint. Am. Compl. 21-32, ECF No. 22.[4]

From January 2024 through April 2024, the showers at Corrigan Correctional Institution ("Corrigan CI") were "filthy" and "filled with black [and] green mold." Am. Compl. 21, ¶ 1. The showers lacked non-slip shower mats, and at times were "flood[ed] with "sewage[,] foul water, bodily fluids[,] mildew, [and] feces." *Id*. These unsanitary conditions, which had existed for "the last few years," were brought to the attention of Peau, Oles, and Dougherty after several people slipped in the shower due to the lack of no-slip shower mats. *Id*. Griffin wrote grievances to Oles and Peau about the unsanitary and unsafe showers, *id*. at 22, ¶ 5, but his requests were "ignored, denied[,] or delayed," *id*.

In April 2024, Griffin slipped and fell in the shower due to these hazardous conditions. *Id*. at 21, ¶ 2. Days later, Griffin noticed "a bump like a[n] abnormal swollen spider bite." *Id*.

---

Complaint and the difficulty in discerning which factual allegations relate to which defendants, the court is unable to establish whether the Complaint satisfies the subjective component, which requires a showing that a defendant must have been actually aware that his or her actions or inactions would cause a substantial risk of harm to the plaintiff. *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). Although the Complaint identifies 26 individual defendants, it appears that the Complaint alleges facts as to only a subset of those individuals.

ECF No. 19.

[4] Citations are to the page numbers set by ECF rather than to any page numbers appearing within the Amended Complaint.

This bump continued to grow and became painful, so he sought medical attention. *Id*. The related pain impacted his leg, hip, and lower back. *Id*.

Griffin was later diagnosed with MRSA, which is a serious infection. *Id*. at 22, ¶ 3. He showed his wound to Nurse Bertocki and Dr. Valletta, and they informed him that he caught MRSA from the unsanitary showers. *Id*. ¶ 4. Griffin says his MRSA diagnosis required additional testing, but Bertocki and Valletta refused and denied and ignored his requests for that additional testing. *Id*.

In April 2024, APRN Grande told Griffin, "[e]veryone [has] MRSA[,] deal with it." *Id*. ¶ 6. Grande would not treat Griffin until he protested, at which point he did receive some treatment. *Id*. But the treatment Griffin received was ineffective. *Id*. Griffin says Grande lied on state documents "to cover up negligence/inadequate medical care by stating Griffin is faking or refusin." *id*.; *see also id.* at 29, ¶ 32.

Between April 2024 and September 2024, Defendants Barnes, Grande, Andexler, and Prabhakar knew about Griffin's MRSA diagnosis but refused to order additional testing. *Id*. at 22, ¶ 7. Grande, Prabhakar, and Barnes prescribed Griffin around three or four courses of "ineffective antibiotics," *id.*, rather than prescribing "MRSA-specific treatment" such as Vancomycin, Linezolid, or incision and drainage of the infection, *id.* at 24, ¶ 11. Griffin says these Defendants ignored his reports that his infections were recurring and worsening. *Id*. Griffin states that during this time period, he had skin boil/abscesses spreading on his leg and groin area, draining yellowish/greenish puss and blood. *See, e.g.*, *id.* at 24, ¶¶ 13-14, *id.* at 26, ¶ 21, *id.* at 28, ¶ 31.

On June 24, 2024, Griffin slipped again in the unsanitary Corrigan CI showers. *Id*. at 23, ¶ 8. Griffin went to medical, and he "was forced to walk to medical without a wheelchair

4

despite obvious severe back/hip pain" by Mayernik and West. *Id*. Griffin told Mayernik and West about his previous fall. *Id*. ¶ 9. Mayernik and West told Griffin they "[w]ould do something but don[']t want to catch MRSA unfortunately sorry." *Id*. ¶ 10. Griffin responded, "but you are nurses and suppose[d] to treat and provide adequate medical care[,] it[']s your job." *Id*. Griffin says his complaints were ignored, and these Defendants did not treat his MRSA, including his bloody skin boils and abscesses. *Id*.

In late June 2024, Griffin showed Warden Dougherty the MRSA spreading on his body. *Id*. at 25, ¶ 20. Dougherty said he would "look into it but never did" to "cover [it] up." *Id*. at 26, ¶ 21. Griffin later wrote to Dougherty about his inadequate medical treatment and unsanitary conditions. *Id*. ¶¶ 22-23. Griffin also had a friend tell Dougherty and Commissioner Quiros about the inadequate treatment and unsanitary conditions. *Id*. ¶ 23. These Defendants ignored Griffin's condition and failed to protect both him and others in the unit by failing to quarantine Griffin in a single cell. *Id*. ¶ 24.

In July 2024, Griffin asked RN Andexler for "MRSA-specific treatment," including diagnostic imaging, physical therapy, pain management, or an orthopedic consultation. *Id*. at 24, ¶ 15. Griffin explained to RN Andexler that he needed to go to UConn to a specialist equipped to deal with his recurring MRSA infections, which were continuing to spread and cause abscesses. *Id*. Griffin also spoke with Barnes requesting similar treatment, but Barnes told him those treatments were not necessary because he no longer had MRSA. *Id*. at 25, ¶ 18. Grande and Barnes told Griffin that the treatment he requested "cost too much" and they would not "was[te] funds on that" because "everyone [has] MRSA." *Id*. (cleaned up). Grande told Griffin, "why [do] you expect me to help you when you are suing me?" *Id*. at 28, ¶ 29. Griffin

sought the same relief from Dr. Prabhakar in August 2024 and from Defendants Grande and Rader in September 2024. *Id.* at 28-29, ¶¶ 27-31.

In August 2024, after Griffin insisted that he was not receiving adequate medical care and needed to see an outside specialist, Barnes issued a ticket to Griffin. *Id.* at 28, ¶ 30. According to the Amended Complaint, Barnes became angry and accused Griffin of calling her a "bitch" and of filing baseless grievances regarding medical care. *Id.* The Amended Complaint denies that Griffin ever said this to Barnes and contends that Barnes punished Griffin in retaliation for Griffin pursuing his rights. *Id.*

In September 2024, after a "shakedown" in the unit, Griffin's prescribed soap was taken from him. *Id.* at 29, ¶ 34. Griffin asked Lieutenant Peau to return the soap, but Peau did not do so, instead "ignor[ing]" and "refus[ing]" Griffin's requests. *Id.* In November 2024, the Corrigan CI showers were boarded up and the mold was "painted over." *Id.* ¶¶ 35-36.

Griffin says that his MRSA infection and resulting scarring has led to him experiencing "chronic ongoing severe lower back pain and right hip pain from [the] fall, . . . limited mobility[,] difficulty sleeping, and inability to perform daily activities." *Id.* at 24, ¶ 12.

As relief, Griffin seeks monetary damages against each Defendant. *Id.* at 35. Griffin also seeks injunctive relief in the form of installing non-slip mats in the showers, sanitizing the showers, and providing him with proper MRSA treatment. *Id.* Griffin sues each Defendant in both their individual and official capacities. *Id.* at 35-38.

## II.  LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915A, courts must review civil complaints in which an incarcerated plaintiff seeks redress from a governmental entity or officer and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be

granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Consistent with this duty, the "submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation and internal quotation marks omitted).

## III.    **DISCUSSION**

The Amended Complaint contends that Defendants violated the Eighth Amendment through (1) their failure to respond to unsanitary showers at Corrigan CI and (2) their deficient response after Griffin contracted MRSA from the unsanitary showers. The Amended Complaint also asserts a retaliation claim under the First Amendment. As I explain below, Griffin may proceed to service on his Eighth Amendment and First Amendment claims for damages but not for injunctive relief.

### A.    **Eighth Amendment**

To show a violation of Eighth Amendment rights for deliberate indifference to health or safety, a plaintiff must allege (1) that he was incarcerated under "conditions posing a substantial risk of serious harm" and (2) the prison official putting him in those conditions was

7

deliberately indifferent to his health or safety. *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). For the second prong, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).

When asserting claims of deliberate indifference to safety or medical needs, a plaintiff must allege facts to suggest that the defendants acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. A defendant must be aware of a substantial risk that the plaintiff would be seriously harmed if the defendant did not act. *See, e.g.*, *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). But "[o]fficials need only be aware of the risk of harm, not intend harm." *Id.*

As I explain, both Eighth Amendment claims asserted in the Amended Complaint may proceed to service.

### 1.     Conditions of Confinement: Unsanitary Showers

"Unsanitary conditions, especially when coupled with other mutually enforcing conditions, . . . can rise to the level of an objective deprivation." *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017). Whether unsanitary conditions are objectively severe depends on "two components, severity and duration," evaluated "on a case-by-case basis." *Id.* There is no "bright-line durational or severity limits in conditions of confinement cases." *Id.* at 31.

Griffin alleges that the showers at Corrigan CI were "filthy" and "filled with black [and] green mold." Am. Compl. 21, ¶ 1. The showers lacked non-slip shower mats, and at times were "flood[ed] with "sewage[,] foul water, bodily fluids[,] mildew, [and] feces." *Id.* At the initial

8

review stage, these allegations support the inference that Griffin experienced objectively serious unsanitary conditions of confinement at Corrigan CI.

With respect to the subjective component, Griffin alleges he informed Peau, Dougherty, and Oles about the condition of the showers. *Id.* His allegations suggest that Defendants failed to take any steps to remedy his conditions of confinement despite being advised about the unsanitary and dangerous condition of the showers.

Thus, for initial review purposes, I conclude that Griffin's allegations suffice to state a claim against Peau, Dougherty, and Oles. Nonetheless, Griffin has not alleged facts to support a claim of deliberate indifference to the condition of the showers against any other Defendant in this action.

Accordingly, I permit Griffin to proceed with his damages claims for an Eighth Amendment violation only against Defendants Peau, Dougherty, and Oles in their individual capacities due to their deliberate indifference to the unsanitary showers.

### 2.    Deliberate Medical Indifference: Treatment for MRSA

Prison officials also violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of a sentenced prisoner. *See Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff must show that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order) (quoting *Salahuddin*, 467 F.3d at 279-80). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a

factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Suarez v. Morton*, 170 F.4th 33, 60 (2d Cir. 2026) (quoting *Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002)). "It is well-settled that one may disregard a risk–and thus be deliberately indifferent to it—through either action or inaction." *Id.* For example, a provider "may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

Griffin alleges that he contracted MRSA from the unsanitary showers at Corrigan CI, and that Defendants failed to provide him with proper medical treatment. I assume for purposes of initial review that deprivation of care with respect to a MRSA infection is sufficiently serious to satisfy the objective component.

I turn therefore to analyze whether any of the Defendants named in the Amended Complaint acted with deliberate indifference to the serious risks to Griffin's health posed by his MRSA infection. I will permit Griffin to proceed on the MRSA claim for damages against the Defendants plausibly involved in responding to his needs for medical treatment to permit further development of the record. This includes Grande, Barnes, Mayernik, Valletta West, Bertocki, Andexler, Prabhakar, Rader, and Sanchez.

According to the Amended Complaint, Grande and Barnes told Griffin that the treatment he requested "cost too much" and that they would not "was[te] funds on that" because "everyone [has] MRSA." Am. Compl. 25, ¶¶ 18-19 (cleaned up). And with respect to Grande, Griffin alleges Grande told him, "why [do] you expect me to help you when you are suing me?" *Id.* at 28, ¶ 29. Moreover, Griffin alleges Mayernik and West told him that they "[w]ould do something but don[']t want to catch (MRSA) unfortunately sorry." *Id.* at 31, ¶ 39.

Bertocki (whom the Amended Complaint describes in part as "Dawn B") and Valletta first confirmed that Griffin had MRSA. *Id.* at 22, ¶ 3. According to the Complaint, Bertocki and Valletta "refuse[d], denied and ignored" the need to conduct further testing. *Id.* ¶ 4. Similarly, the Amended Complaint states that Andexler and Prabhakar declined to order further testing to determine the progression of the MRSA infection. *Id.* ¶ 7.

The Amended Complaint also contends that Rader, Prabhakar, and Sanchez (along with the other treatment providers described here) repeatedly prescribed a course of antibiotics that they knew or should have known would be ineffective. *Id.* at 23, ¶ 11. The Amended Complaint contends that Andexler improperly "reject[ed] and stonewall[ed]" Griffin's grievances, which caused an undue delay in necessary treatment. *Id.* at 24-25, ¶¶ 15-17.

To be sure, discovery may reveal that Defendants did not respond as alleged, or that Defendants reasonably applied their medical judgment in response to Griffin's needs. *Cf. Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."). But for purposes of initial review, these allegations support the inferences that these treatment providers were aware of Griffin's condition and acted with deliberate indifference in intentionally choosing an "easier and less efficacious treatment." *Id.*

But I do not find that the Amended Complaint supports the inference that the other Defendants—Peau, Dougherty, Quiros, Oles, and Regan—are liable for this claim. These individuals do not appear to have been personally involved in providing medical care to

11

Griffin.[5] In particular, although the Amended Complaint faults Lieutenant Peau (whom I assume to be a correctional officer) for seizing prescription soap following a search of Griffin's cell in September 2024, the Amended Complaint also maintains that the soap was ineffective in addressing Griffin's treatment. *See* Am. Compl. 29, ¶¶ 33-34. I cannot infer from this record that Peau "intentionally den[ied] or delay[ed] access to medical care." *Darby*, 14 F.4th at128 (citation and internal quotation marks omitted). Nor does the Amended Complaint contain any non-conclusory facts to support the inference Dougherty, Quiros, or Oles failed to act after learning about a substantial risk to Griffin's health.

Accordingly, I permit Griffin to proceed on an Eighth Amendment claim for damages related to MRSA treatment against Grande, Barnes, Mayernik, Valletta West, Bertocki, Andexler, Prabhakar, Rader, and Sanchez in their individual capacities. Griffin's claim against all other Defendants is dismissed without prejudice and with leave to amend.

### B.    First Amendment Retaliation

I did not identify a plausible First Amendment retaliation claim on initial review of Griffin's original Complaint. *See* ECF No. 19. But the Amended Complaint can be fairly read to assert two different First Amendment claims. First, Griffin contends that Grande provided inadequate medical care in retaliation for Griffin naming her in a prior action, *Griffin v. Barroga*, No. 3:23-cv-1590 (SFR). Am. Compl. 28, ¶ 29. Second, Griffin asserts that Barnes retaliated against him by issuing a ticket after he submitted grievances accusing her of not doing her job. *Id.* ¶ 31.

---

[5] It appears that Regan may have been involved in managing Griffin's medical records. Am. Compl. 27, ¶ 25. But I cannot discern any non-conclusory facts that would suggest Regan was otherwise involved in providing medical care to Griffin.

To prevail on a First Amendment retaliation claim, a plaintiff must show "'(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). "Courts must approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Walker v. Senecal*, 130 F.4th 291, 298 (2d Cir. 2025) (citation and internal quotation marks omitted). Accordingly, courts require "prisoner retaliation claims [to] be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Id.* at 299 (internal quotation marks omitted).

I begin by analyzing Griffin's retaliation claim against Grande, whom Griffin says provided inadequate treatment because of Griffin's other pending lawsuit against her. The first requirement is clearly satisfied because it is well established that "the filing of a lawsuit or a grievance is protected conduct." *Walker*, 130 F.4th at 298. The second requirement also appears to be satisfied insofar as the Amended Complaint suggests that Grande delayed in providing adequate treatment, which I conclude would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Id.* (citation and internal quotation marks omitted). I also conclude that the third requirement—causation—is satisfied here because the Amended Complaint alleges that Grande explained her care decisions by directly referencing Griffin's prior suit. In particular, the Amended Complaint states that Grande asked Griffin: "Why [do] you expect me to help you when you are suing me?" Am.

13

Compl. 28, ¶ 29. At the initial review stage, these allegations suffice to state a claim under the First Amendment. Griffin may therefore proceed on a claim for damages under the First Amendment against Grande.

I turn next to Griffin's retaliation claim against Barnes. According to the Amended Complaint, Barnes issued a ticket to Griffin after Griffin wrote grievances accusing Barnes of not doing her job. *Id.* at 28, ¶ 31. Here too the first requirement for a retaliation claim is satisfied because filing a grievance is protected conduct. *Walker*, 130 F.4th at 298. I also conclude that the second requirement—adverse action—is satisfied. The Amended Complaint states that Barnes issued a ticket to Griffin after he submitted grievances against her. Am. Compl. 28, ¶ 31. "A misbehavior report issued in retaliation for an inmate's exercise of a protected activity may constitute an adverse action." *Tripathy v. Brotz*, No. 6:22-CV-06469-FPG, 2023 WL 4032831, at *7 (W.D.N.Y. June 15, 2023), *aff'd sub nom. Tripathy v. McKoy*, 103 F.4th 106 (2d Cir. 2024); *accord Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983."). Finally, I conclude that the third requirement—causation—is satisfied because the Amended Complaint alleges that Griffin was disciplined because of the content of his grievances.

For these reasons, Griffin may proceed on a claim for damages under the First Amendment against Grande and Barnes.

### C.    Official Capacity Claims

The Amended Complaint asserts claims against Defendants in their official capacities. To the extent Griffin asserts official capacity claims for monetary damages against Defendants

(all presumably state employees), such claims are dismissed as barred by state sovereign immunity. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Griffin also seeks injunctive relief in the form of an order directing Defendants to (1) remedy unsanitary showers and (2) provide additional diagnostic imaging and treatment for his medical needs. Am. Compl. 35. Griffin may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

Griffin is now housed at MacDougall-Walker Correctional Institution. ECF No. 27. Because Griffin is no longer housed at Corrigan CI, his requests for official capacity relief against Defendants who provide medical care at Corrigan and to address conditions in the showers at Corrigan are moot. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). Nor can I say from this record that Griffin is experiencing an ongoing constitutional violation related to his medical needs. I therefore dismiss all requests for declaratory and injunctive relief without prejudice and with leave to amend.

## IV.   <u>CONCLUSION AND ORDERS</u>

For the foregoing reasons, I conclude as follows:

(1) Griffin may proceed against Grande, Barnes, Mayernik, Valletta West, Bertocki, Andexler, Prabhakar, Rader, and Sanchez in their individual capacities on his damages claim that Defendants violated the Eighth Amendment in treating his MRSA infection.

(2) Griffin may proceed against Defendants Peau, Dougherty, and Oles in their individual capacities on his damages claim that Defendants violated the Eighth Amendment because of the unsanitary showers at Corrigan CI.

(3) Griffin may proceed against Barnes and Grande in their individual capacities on his damages claim for retaliation in violation of the First Amendment.

All other claims, including official capacity claims, are **DISMISSED without prejudice and with leave to amend**.

**Griffin has two options as to how to proceed in response to this Initial Review Orde**r:

If Griffin wishes to proceed immediately **only** on the claims against as set forth in paragraphs one and two, he may do so without further delay. If Griffin selects this option, he shall file a notice on the docket on or before **June 30, 2026** informing the court that he elects to proceed with service as to the claims as set forth above. The court will then begin the effort to serve process on Defendants.

Alternatively, if Griffin wishes to attempt to replead any of the claims asserted in the Amended Complaint that have been dismissed in order to attempt to state a viable claim, he may file a Second Amended complaint on or before **June 30, 2026**. A Second Amended Complaint, if filed, will completely replace the complaint, and the court will not consider any allegations made in the first Amended Complaint in evaluating any Second Amended Complaint. The court will review any Second Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Griffin elects to file a Second Amended Complaint, the first Amended Complaint addressed by this Initial Review Order will **not** proceed to service of process on any defendant.

If the court receives no response from Griffin before **June 30, 2026,** the court will presume that Griffin wishes to proceed on the first Amended Complaint as to the claims permitted to go forward in this Initial Review Order, and he will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address**. If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c) provides that he **MUST** notify the court. Failure to do so may result in the dismissal of the case. He must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED.**

New Haven, Connecticut
June 1, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

17
